**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE BARNHART,<br><br>Plaintiff,<br><br>vs.<br><br>AVIDITY BIOSCIENCES, INC., TROY WILSON, CARSTEN BOESS, NOREEN HENIG, JEAN KIM, EDWARD KAYE, SIMONA SKERJANEC, TAMAR THOMPSON, SARAH BOYCE, and ARTHUR A. LEVIN,<br><br>Defendants. | Case No.: **'25CV3414 TWR BLM**<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Steve Barnhart ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against Avidity Biosciences, Inc. ("Avidity" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a)

- 1 -
COMPLAINT

1 and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Novartis AG ("Novartis") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an October 27, 2025, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Novartis will acquire the Company in an all-cash transaction at $72.00 per share.

3. Thereafter, on November 24, 2025, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example, certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Avidity, provided by Avidity management to the Company Board, and the Board's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Barclays Capital Inc. ("Barclays"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs and Barclays if any, and provided to the Company.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

**PARTIES**

7. Plaintiff is a citizen of Pennsylvania, and at all times relevant hereto, has been an Avidity stockholder.

8. Defendant Avidity, a biopharmaceutical company, engages in the delivery of RNA therapeutics called antibody oligonucleotide conjugates (AOCs). The Company is incorporated in Delaware and has its principal place of business at 10578 Science Center Drive, Suite 125, San Diego, CA 92121. Shares of Avidity common stock are traded on the NASDAQ Capital Markets under the symbol "RNA."

9. Defendant Troy Wilson ("Wilson") has been chair of the Company Board at all relevant times. In addition, Defendant Wilson is the Co-Founder of the Company.

10. Defendant Carsten Boess ("Boess") has been a director of the Company at all relevant times.

11. Defendant Noreen Henig ("Henig") has been a director of the Company at all relevant times.

12. Defendant Jean Kim ("Kim") has been a director of the Company at all relevant times.

13. Defendant Edward Kaye ("Kaye") has been a director of the Company at all relevant times.

14. Defendant Simona Skerjanec ("Skerjanec") has been a director of the Company at all relevant times.

15. Defendant Tamar Thompson ("Thompson") has been a director of the Company at all relevant times.

16. Defendant Sarah Boyce ("Boyce") has been a director of the Company at all relevant times. In addition, Defendant Boyce serves as the Company's President and Chief Executive Officer ("CEO").

17. Defendant Arthur A. Levin ("Levin") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party Novartis researches, develops, manufactures, distributes, markets, and sells pharmaceutical medicines in Switzerland and internationally.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Avidity, a biopharmaceutical company, engages in the delivery of RNA therapeutics called antibody oligonucleotide conjugates (AOCs). Its AOC platform is designed to combine the specificity of monoclonal antibodies with the precision of RNA therapeutics to target the root cause of diseases previously untreatable with such therapeutics. The company's pipeline has three programs in registrational clinical trials, such as Delpacibart etedesiran, which is in

Phase 3 development stage for the treatment of people with myotonic dystrophy type 1; Delpacibart braxlosiran that is in Phase 1/2 development stage for treating facioscapulohumeral muscular dystrophy; and Delpacibart zotadirsen, which is in the Phase 2 EXPLORE44 open-label extension study for the treatment of Duchenne muscular dystrophy.

**The Flawed Sales Process**

24. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

25. The Proxy Statement fails to disclose why the Company determined it was necessary to hire two financial advisors in connection with the Proposed Transaction.

26. The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Novartis, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so in all specific manners.

27. Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

28. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

29. On October 26, 2025, Avidity issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN DIEGO, Oct. 26, 2025 /PRNewswire/ -- Avidity Biosciences, Inc. ("Avidity") (Nasdaq: RNA), a biopharmaceutical company committed to delivering a new class of RNA therapeutics called Antibody Oligonucleotide Conjugates ("AOCs™") to profoundly improve people's lives, today announced that it has entered into a definitive merger agreement with Novartis AG ("Novartis") which has been unanimously approved by the Boards of Directors of both companies. The acquisition will follow the separation of Avidity's early-stage precision cardiology programs into SpinCo, which is expected to be a publicly traded company. SpinCo

will be led by Kathleen Gallagher, currently Avidity's chief program officer, as chief executive officer. Sarah Boyce, currently Avidity's chief executive officer, will serve as chair of the board.

Pursuant to the terms of the merger agreement, holders of Avidity common stock will receive USD 72.00 per share in cash at closing, representing a premium of approximately 46% over Avidity's closing share price on October 24, 2025 of USD 49.15 and approximately 62% over Avidity's October 24 closing 30-day volume weighted average price of USD 44.42, and valuing the company at approximately USD 12.0 billion on a fully diluted basis. Avidity stockholders will also receive consideration for the separation of the SpinCo business.

"Avidity has expanded the possibilities of what RNA therapeutics can deliver to patients by advancing innovative science and creating an organization with a strong commitment to providing access to our potential medicines. We are confident that this transaction with Novartis maximizes value for our investors and will support the global expansion of our neuroscience pipeline," said Sarah Boyce, president and chief executive officer of Avidity. "I am incredibly proud of what we have created in close collaboration with the patient and clinical communities we serve, and I want to thank them and the Avidity team for their commitment and dedication."

Novartis will acquire Avidity's programs and pipeline in neuroscience and gain access to its differentiated RNA-targeting delivery platform. The agreement includes three late-stage clinical development programs: delpacibart zotadirsen (*del-zota*) for the treatment of Duchenne muscular dystrophy (DMD), delpacibart etedesiran (*del-desiran*) for the treatment of myotonic dystrophy type 1 (DM1) and delpacibart braxlosiran (*del-brax*) for the treatment of facioscapulohumeral muscular dystrophy (FSHD).

SpinCo will focus on Avidity's early-stage programs in precision cardiology. Key programs include AOC 1086 and AOC 1072, which target rare genetic cardiomyopathies, including phospholamban (PLN) and Protein Kinase AMP-activated non-catalytic subunit Gamma 2 ("PRKAG2") Syndrome, respectively. SpinCo will also encompass collaborations with Bristol Myers Squibb and Eli Lilly and Company and hold rights to continue the development of Avidity's proprietary platform, including next-generation technology improvements, for applications in the cardiology field.

"We have already seen the tremendous impact targeted delivery of RNA therapeutics to muscle can have for people living with rare diseases based on the impressive advancements Avidity has made with its neuroscience programs," said Kathleen Gallagher, currently chief program officer at Avidity. "Avidity's precision cardiology pipeline is poised to progress rapidly, and I am excited to lead the team that will build on our groundbreaking AOC platform with the potential to address high unmet need in cardiovascular diseases."

**Transaction details**

Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, Novartis, through a merger with a newly formed indirect wholly owned subsidiary, will acquire all outstanding shares of Avidity and holders of Avidity common stock will receive USD 72.00 per share in cash at closing.

Prior to the closing of the merger, Avidity will transfer to SpinCo, currently a wholly owned subsidiary of Avidity, the early-stage precision cardiology programs and collaborations of Avidity. Holders of Avidity common stock will receive (1) a distribution of one share of SpinCo for every ten shares of Avidity they hold and/or (2) a pro rata cash distribution of the proceeds received by Avidity prior to the closing if certain SpinCo assets are, or SpinCo itself is, sold to a third party. SpinCo is expected to begin trading as a new public company following the spin-off and capitalized with $270 million in cash. SpinCo will be led by Kathleen Gallagher as chief executive officer. Sarah Boyce will be chair of the board.

The transfer of assets to SpinCo includes certain Avidity assets that trigger a right of first negotiation with an existing collaboration partner of Avidity that will be notified concurrently with this announcement. Discussions, if any, with the existing collaboration partner will occur confidentially.

The acquisition by Novartis of Avidity is subject to the completion of the separation of SpinCo and other customary closing conditions, including the receipt of regulatory approvals and the approval of Avidity's stockholders. The companies expect the transactions to close in the first half of 2026. Until closing, Novartis and Avidity will continue to operate as separate and independent companies.

*Potential Conflicts of Interest*

30.     The breakdown of the benefits of the deal indicates that Avidity insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Avidity.

31.     Company insiders currently own large illiquid amounts of Company Shares all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as

follows:

| Name | Company Stock Options as of November 21, 2025 (vested) (#) | Cash Merger Consideration for vested Company Stock Options as of November 21, 2025 ($) | Estimated Value of Shares of SpinCo Common Stock to be granted with respect to vested Company Stock Options as of November 21, 2025 ($)(1) | Company Stock Options as of November 21, 2025 (unvested) (#) | Cash Merger Consideration for unvested Company Stock Options as of November 21, 2025 ($) | Estimated Value of Shares of SpinCo Common Stock to be granted with respect to unvested Company Stock Options as of November 21, 2025 ($)(1) |
|---|---|---|---|---|---|---|
| Sarah Boyce | 1,656,848 | 96,765,422 | 2,617,822 | 519,167 | 28,149,200 | 820,286 |
| Charles Calderaro III | 0 | 0 | 0 | 80,000 | 3,246,400 | 126,400 |
| W. Michael Flanagan, Ph.D. | 229,563 | 12,788,308 | 362,710 | 167,938 | 9,122,073 | 265,343 |
| Kathleen Gallagher | 113,472 | 5,975,477 | 179,293 | 94,858 | 4,501,860 | 149,878 |
| Stephen Hughes, M.D. | 124,125 | 6,802,979 | 196,119 | 191,008 | 10,462,628 | 301,796 |
| Michael F. MacLean | 407,823 | 22,170,669 | 644,363 | 179,552 | 9,830,136 | 283,695 |
| Teresa McCarthy | 373,854 | 19,065,430 | 590,691 | 144,646 | 7,777,801 | 228,541 |
| John B. Moriarty, Jr, J.D. | 60,417 | 2,667,292 | 95,459 | 149,583 | 4,623,592 | 236,342 |
| Eric Mosbrooker | 16,980 | 835,850 | 26,829 | 210,208 | 12,347,136 | 332,130 |
| Carsten Boess | 93,347 | 5,067,426 | 147,489 | 10,034 | 385,105 | 15,854 |
| Troy Wilson, Ph.D., J.D. | 28,489 | 1,120,838 | 45,013 | 10,034 | 385,105 | 15,854 |
| Arthur A. Levin, Ph.D. | 238,677 | 12,500,522 | 377,110 | 56,847 | 2,743,432 | 89,818 |
| Simona Skerjanec | 21,154 | 911,526 | 33,424 | 31,188 | 1,296,631 | 49,278 |
| Tamar Thompson | 57,489 | 3,060,968 | 90,833 | 10,034 | 385,105 | 15,854 |
| Noreen Henig, M.D. | 93,346 | 5,147,449 | 147,488 | 10,034 | 385,105 | 15,854 |
| Edward M. Kaye, M.D. | 93,346 | 5,147,449 | 147,488 | 10,034 | 385,105 | 15,854 |
| Jean Kim | 57,489 | 3,060,968 | 90,833 | 10,034 | 385,105 | 15,854 |

32.     Additionally, Company insiders currently own large amounts of Company RSUs, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Company RSUs as of November 21, 2025 (#) | Cash Merger Consideration for Company RSUs as of November 21, 2025 ($) | Estimated Value of Shares of SpinCo Common Stock to be granted with respect to Company RSUs as of November 21, 2025 ($)(1) |
|---|---|---|---|
| Sarah Boyce | 388,375 | 27,963,000 | 613,633 |
| Charles Calderaro III | 112,000 | 8,064,000 | 176,960 |
| W. Michael Flanagan, Ph.D. | 132,000 | 9,504,000 | 208,560 |
| Kathleen Gallagher | 121,232 | 8,728,704 | 191,548 |
| Stephen Hughes, M.D. | 123,125 | 8,865,000 | 194,538 |
| Michael F. MacLean | 123,125 | 8,865,000 | 194,538 |
| Teresa McCarthy | 119,375 | 8,595,000 | 188,613 |
| John B. Moriarty, Jr, J.D. | 115,750 | 8,334,000 | 182,885 |
| Eric Mosbrooker | 127,000 | 9,144,000 | 200,660 |
| Carsten Boess | 6,692 | 481,824 | 10,574 |
| Troy Wilson, Ph.D., J.D. | 6,692 | 481,824 | 10,574 |
| Arthur A. Levin, Ph.D. | 15,692 | 1,129,824 | 24,794 |
| Simona Skerjanec | 6,692 | 481,824 | 10,574 |

| Named Executive Officer | | | |
|---|---|---|---|
| Tamar Thompson | 6,692 | 481,824 | 10,574 |
| Noreen Henig, M.D. | 6,692 | 481,824 | 10,574 |
| Edward M. Kaye, M.D. | 6,692 | 481,824 | 10,574 |
| Jean Kim | 6,692 | 481,824 | 10,574 |

33. Further, certain employment agreements with certain Avidity executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

*Golden Parachute Compensation*[1]

| Named Executive Officer | Cash ($)[2] | Equity ($)[3] | Perquisites/Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Sarah Boyce<br>*President and Chief Executive Officer* | 2,833,227 | 56,112,200 | 64,386 | 59,009,813 |
| Michael F. MacLean<br>*Chief Financial Officer* | 1,365,008 | 18,695,136 | 16,520 | 20,076,664 |
| W. Michael Flanagan, Ph.D.<br>*Chief Scientific Officer* | 1,417,280 | 18,626,073 | 33,834 | 20,077,187 |
| Teresa McCarthy<br>*Chief Human Resources Officer* | 1,235,485 | 16,372,801 | 48,290 | 17,656,576 |
| John B. Moriarty, Jr, J.D.<br>*Chief Legal Officer and Corporate Secretary* | 1,351,875 | 12,957,592 | 48,290 | 14,357,757 |

| Named Executive Officer | Annual Salary ($) | Target Annual Bonus Opportunity ($) | Cash Severance Multiplier ($) | Pro-Rated Annual Bonus ($) | Total Cash Payments ($) |
|---|---|---|---|---|---|
| Sarah Boyce | 758,900 | 455,340 | 2.0 | 404,747 | 2,833,227 |
| Michael F. MacLean | 530,100 | 238,545 | 1.5 | 212,040 | 1,365,008 |
| W. Michael Flanagan, Ph.D. | 550,400 | 247,680 | 1.5 | 220,160 | 1,417,280 |
| Teresa McCarthy | 479,800 | 215,910 | 1.5 | 191,920 | 1,235,485 |
| John B. Moriarty, Jr, J.D. | 525,000 | 236,250 | 1.5 | 210,000 | 1,351,875 |

34. The Proxy Statement fails to adequately all communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

35. Thus, while the Proposed Transaction is not in the best interests of Avidity, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Proxy Statement**

36. The Avidity Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>

37. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

    a. Why the Company determined it was necessary to hire two financial advisors in connection with the Proposed Transaction;

    b. Whether the confidentiality agreements entered into by the Company with Novartis differed from any other unnamed confidentiality agreement entered into between the Company and any interested third parties; and

    c. Any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

<u>Omissions and/or Material Misrepresentations Concerning Avidity Financial Projections</u>

38. The Proxy Statement fails to provide material information concerning financial projections for Avidity provided by Avidity management to the Company Board, Goldman Sachs, and Barclays and relied upon by Goldman Sachs and Barclays in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are

materially misleading.

39. Notably, the Proxy Statement reveals that as part of its analyses, Goldman Sachs reviewed: "certain internal financial analyses and forecasts the Company prepared by the management of the Company and approved for Goldman Sachs's use by the Company."

40. Additionally, the Proxy Statement reveals that as part of its analyses, Barclays reviewed: "certain financial and operating information with respect to the business, operations and prospects of the Company, including the Forecasts, furnished to Barclays by the Company."

41. The Proxy Statement should have, but fails to provide, certain information in the projections that Avidity management provided to the Company Board, Goldman Sachs, and Barclays. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

42. With respect to the *Certain Financial Projections*, the Proxy Statement fails to disclose:

    a. Regarding the *October 2025 Projections*, disclose:

        i. Total Revenue, including the inputs, metrics, and assumptions used to determine same;

        ii. Gross Profit, including the inputs, metrics, and assumptions used to determine same;

        iii. EBIT, including the inputs, metrics, and assumptions used to determine same;

        iv. NOPAT, including the inputs, metrics, and assumptions used to determine same; and

        v. Unlevered Free Cash Flow, including the inputs, metrics, and assumptions used to determine same.

- 11 -
COMPLAINT

      b. Regarding the *May 2025 Case 1 Projections*, disclose:

          i. Revenue, including the inputs, metrics, and assumptions used to determine same; and

          ii. EBIT, including the inputs, metrics, and assumptions used to determine same.

      c. Regarding the *May 2025 Case 2 Projections*, disclose:

          i. Revenue, including the inputs, metrics, and assumptions used to determine same; and

          ii. EBIT, including the inputs, metrics, and assumptions used to determine same.

      d. Regarding the *SpinCo Projections*, disclose:

          i. Total Revenue, including the inputs, metrics, and assumptions used to determine same;

          ii. Gross Profit, including the inputs, metrics, and assumptions used to determine same;

          iii. EBIT, including the inputs, metrics, and assumptions used to determine same;

          iv. NOPAT, including the inputs, metrics, and assumptions used to determine same; and

          v. Unlevered Free Cash Flow, including the inputs, metrics, and assumptions used to determine same.

43. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

44. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

45. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs and Barclays' financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

46. In the Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47. With respect to the *Illustrative Discounted Cash Flows Analysis*, the Proxy Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the discount rates of 15.0% to 17.0% utilized;

    b. The inputs, metrics, and assumptions used to determine the perpetuity growth rates range of 1.0% to 3.0% utilized; and

    c. The number of fully diluted outstanding shares of Common Stock as of October 23, 2025.

48. With respect to the *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose:

    a. The EV for each of the target companies in each selected precedent transaction analyzed;

    b. The specific date on which each selected precedent transaction closed;

    c. The aggregate value of each selected precedent transactions analyzed;

    d. The specific metrics observed for each of the selected precedent transactions

     analyzed; and

  e. The inputs, metrics, and assumptions used to determine the illustrative premiums reference range of 38% to 66% utilized.

49. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

50. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Avidity stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Barclays*

51. In the Proxy Statement, Barclays describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Discounted Cash Flows Analysis*, the Proxy Statement fails to disclose:

  a. The inputs, metrics, and assumptions used to determine the perpetuity growth rates range of 1.0% to 3.0% utilized;

  b. The inputs, metrics, and assumptions used to determine the discount rates of 15.5% to 17.5% utilized; and

  c. The number of fully diluted outstanding shares of Common Stock as of October 23,

2025.

53. With respect to the *Analyst Price Targets Analysis*, the Proxy Statement fails to disclose:

    a. The specific price targets analyzed; and

    b. The specific Wall Street firms that generated the analyzed price targets.

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

55. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Avidity stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein.

57. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

58. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

59. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

60. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

62. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

63. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

64. Plaintiff repeats all previous allegations as if set forth in full herein.

65. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

66. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

67. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Avidity's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

68. The Individual Defendants acted as controlling persons of Avidity within the

meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Avidity to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Avidity and all of its employees. As alleged above, Avidity is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 3, 2025         **BRODSKY SMITH**

By: *Ryan P. Cardona*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Blvd., Ste. 300
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*